## Israel C. Depew, Exr., Plff. in Err., v. Jacob Depew.

If defendant in an action on a bond denies having executed the instrument, the question of the genuineness of the signature as well as that of the breach, is for the jury, in view of all the evidence.

The obligor in a bond conditioned to pay a certain sum in case he should collect a specified sum from a third person was sued for a breach of the condition, consisting in his alleged neglect to make reasonable efforts to make such collection. *Held,* that the burden was on the plaintiff to prove such neglect.

· Refusal of the trial court to entertain an objection to a deposition,—*held,* a harmless error and therefore proper to be disregarded on writ of error, where there was nothing really objectionable nor prejudicial to the objecting party in the testimony.

(Decided March 29, 1886.)

Error to the Common Pleas of Wyoming County to review a judgment for defendant in an action of covenant. Affirmed.

This action was brought upon the following bond:

"Know all men by these presents that I, Jacob Depew, of the township of Fallstown, in the county of Wyoming and state of Pennsylvania, am held and firmly bound unto Solomon Depew, of the township of Madison, county of Luzerne and state afore-

---

·Cited in Shannon v. Castner, 21 Pa. Super. Ct. 294, 326.

NOTE.—The objection to the deposition offered in this case was that the testimony given was hearsay. If any injury had been sustained from its admission the error would have been fatal. In such cases counsel should not object to the admission of the whole deposition, but only to the objectionable portion. Henry v. Com. 107 Pa. 361; Martin v. Kline, 157 Pa. 473, 27 Atl. 753. And the objection will not be first considered in the appellate court. Winton v. Little, 94 Pa. 64; Hill v. Hill, 42 Pa. 198. The error will be considered to have been cured, if the deposition admitted is stricken out, when it is made to appear to the court by a second deposition that the evidence is hearsay. Rider v. Maul, 70 Pa. 15.

No doubt a consent, or waiver of objections, to a deposition, must be somewhat strictly construed, for the practice of receiving testimony by deposition is a statutory innovation upon the common law, and the privilege cannot be exercised *in invitum* except upon the conditions prescribed by the statute. A deposition not taken according to the rules of law must be excluded if objection is made no usage can give validity to it, unless the adverse party expressly waives the objection, or unless it has been taken pursuant to a distinct consent to the mode adopted. Evans v. Eaton, 7 Wheat. 356, 5 L. ed. 473.

Where the interrogatories were settled by stipulation that "the within interrogatories and cross interrogatories are agreed upon, and this stipulation shall have the same effect as the allowance of the judge reserving

said in the sum of $3,383, lawful money of the United States, to be paid to the said Solomon Depew, his executors, administrators, or assigns, for which payment, well and truly to be made, I bind myself, my heirs, executors, administrators, and each of them, firmly by these presents. Sealed with my seal, dated the 1st day of January, 1867. The condition of the above obligation is such that, if the above bounded Jacob Depew or his heirs, executors,or administrators shall well and truly pay or cause to be paid unto the above-named Solomon Depew, his executors, administrators, or assigns the just sum of $1,691.50, to be paid in three equal instalments: the first, the 1st day of January, 1871; second, 1872; third, 1873, with annual interest, and the interest yearly on the above sum from date three years, that is to say, one year's interest, due and payable 1st day of January, 1868; second, 1869; third, 1870; the above-bounded Jacob Depew ágrees to pay the above instalments as expressed on condition that he, Jacob Depew, collects the above sum of Wm. R. Scott, of the state of Delaware, then the above obligation to be void; otherwise to remain in full force and virtue.                            Jacob Depew [Seal].

     Witness:

       Thos. Depew.

---

all legal rights," it was held that objection to form of the interrogatories was waived. Cope v. Sibley, 12 Barb. 521.

But a party cannot object to his own omission of a formality prescribed by law. Thus, plaintiff may read a deposition taken under a commission issued at the instance of defendant, notwithstanding defendant did not give him notice that it was to be taken, for defendant cannot object to his own deposition on the ground that he did not give notice. Yeaton v. Fry, 5 Cranch, 335, 3 L. ed. 117.

A stipulation to "waive all objections to form and manner of taking" a deposition does not dispense with the necessity of returning it to court in all respects as prescribed by law. Thus, when a deposition taken under such a stipulation remained for several months in the hands of defendant's attorney, and was not placed on file until the morning of the trial, it was excluded. Livingston v. Pratt, 1 Brown Adm. 66, Fed. Cas. No. 8,417.

A deposition was taken *de bene esse*, the adverse party waiving all objections. Held, that this waiver did not make it a deposition in chief; but extended only to the character in which it was taken. The Thomas & Henry v. United States, 1 Brock. 367, 373, Fed. Cas. No. 13,919.

But where a party with knowledge of the contents of a deposition consents in general terms that it be read, his consent is deemed to extend to incompetent as well as competent evidence which it may contain. Harris v. Wall, 7 How. 693, 705, 12 L. ed. 875, 880.

At the trial the court admitted against plaintiff's objection the following deposition. Israel Depew, sworn, says:

My age is seventy years past. Solomon Depew was a brother of mine. He is now dead. Thomas was also a brother of mine. He is now dead. Jacob Depew is a brother of mine. Solomon and Jacob did own a piece of real estate together in the state of Delaware. I never saw it, but I heard them both say so together. I heard them both say (to me) that they had sold it to a man by the name of Scott. I think his name was William. I have heard Jacob and Solomon talk it together that Mr. Little was trying to collect it. Jacob sent Thomas down there to collect it. I know that. Thomas went to Philadelphia. I was with Jacob when he went to see Thomas after he came back. He met Scott in Philadelphia. Thomas said there were no prospects of collecting anything. Afterwards I heard Jacob tell Solomon of the trying to collect through Thomas. And Jacob Depew told Solomon that if he, Solomon, thought he could collect it he, Jacob, would assign it all over to him and he, Solomon, could have the whole, because he, Jacob, would do nothing more because he, Jacob, could not collect it. I was in Tunkhannock as a witness in a suit between Solomon Depew and Jacob Depew over an alleged bond. I recollect you (C. A. Little) showing me the bond in suit. My attention was called to it and I took particular notice of the alleged signature of Jacob Depew to the bond. I am very well acquainted with Jacob Depew's signature. I don't think it was Jacob Depew's signature. I have heard Solomon say that he thought it queer that some part of the Scott mortgage could not be collected. He thought it queer that Scott got rid of all his property so that nothing could be collected. I heard Solomon and Jacob talk that there was a mortgage ahead of theirs on this property, when they bought and when they sold to Scott.

    (Signed)                                             Israel Depew.

Duly certified to by W. A. Wilcox, commissioner, Aug. 9, 1883.

Indorsed on deposition:

Now, August 10, 1883, counsel for both parties agree that no advantage shall be taken of the fact that W. A. Wilcox took

the foregoing deposition, and also that plaintiff shall now enter his objections to the testimony above set forth, with like effect as if he had been present and cross-examined said witness at the taking of the deposition.

> Chas. E. Terry,
>                    Atty. for plaintiff.
> W. E. & C. A. Little,
>                    Attys. for defendant.

Other facts appear in the charge of the court below, which was by INGHAM, J., as follows:

The case which you have been sworn to try is an action of covenant, in which the defendant enters the pleas of *non est factum* and covenant performed. That is, they plead, in the first place, that there has been no execution of the signature by the defendant to the bond; and in the second place, that, if it is his signature, or if there was an execution of it, there has been no breach of the bond.

The first question to which you will give your consideration is: Did the defendant Jacob Depew sign or execute the bond upon which this suit is brought? His name is attached to it, and there is also a subscribing witness attached, Thomas Depew. Evidence has been given that Thomas Depew is dead, and therefore testimony has been given in this case to show the handwriting of the subscribing witness, which is the usual and proper mode of proving an instrument of this kind when the subscribing witness is dead. In the first place the plaintiff calls John Dunstan, who testifies that he was acquainted with Thomas Depew and had frequently seen him write. He testifies that in his opinion it is clearly the signature of Thomas Depew that is attached to the instrument. Mr. Ryman also testifies that he had frequently seen Thomas Depew write, and is acquainted with his signature, and that this is the signature of Thomas Depew.

On the other side, there is the deposition of Israel Depew, who testifies that he was a brother of Thomas and well acquainted with his signature and that he was a brother of Jacob; and he testifies that in his opinion it is not the signature of Jacob Depew. Also, the testimony of Albert Depew, son of Jacob Depew, who testifies that in his opinion it is not the signature of his father. In addition to this you have the admitted and

proven signature of Jacob Depew, and it is within your duty and right as jurors to make a comparison of them with the signature upon the bond.

From all this evidence, bearing upon the execution of this contract, you are to make up your minds whether or not Jacob Depew executed that bond. If you come to the conclusion that he did not execute the bond, then the case is ended. Your verdict in that case would be for the defendant. But if you should conclude from all the evidence that it is a genuine signature and a genuine bond, then you will come to the consideration of the second plea in the case.

The next question is: Has the covenant contained in the bond been performed? And, preliminary to this inquiry, you will ascertain what the covenant is. The language, "Jacob Depew agrees to pay above instalment as expressed, on condition that he (Jacob Depew) collects the above sum of William R. Scott, of the state of Delaware," clearly implies an intent in the bond that the obligor shall make a reasonable effort to collect the amount from Scott. The burden being upon the plaintiff to prove a breach of the bond, to enable him to recover he must prove, either that the defendant did collect the money from Scott, or that he failed to collect it by reason of negligence.

The first question, then, before you is: Did Jacob Depew collect anything? If he collected the money, then the bond is good; the condition was fulfilled that he was bound to pay it over. We think that, in looking over the evidence, you will find no evidence of the actual collection of the money from Scott.

If you are fully satisfied of that, you will address your minds to the next question, and that is: Was the failure to collect caused by the negligence of Jacob Depew? And bear in mind that the burden being upon the plaintiff to prove the breach of the bond, the burden is upon the plaintiff to prove that there was negligence on his part, and that by reason of that negligence there was a failure to collect the money. If the plaintiff satisfies you of the truth of that position by the weight of evidence, you will find for the plaintiff. If he fails to satisfy you of that fact by the weight of evidence, your verdict will be for the defendant.

I will briefly recall to your minds some of the evidence bearing upon this part of the case. It is in evidence that this is the mortgage which William R. Scott gave to Jacob Depew, and

that connected with this bond was a mortgage which this bond was given to secure. The mortgage, as appears by an entry on it, was delivered on the 9th of August, 1867 (witness, R. R. Little). So that was the date of this mortgage which Jacob Depew was to collect. In the mortgage he has described some land which was security for the obligation in the bond, and the evidence indicates that this was the debt which Jacob Depew was to collect from William R. Scott.

Delivery being made August 9, 1867, we find by an entry upon this bond that it was recorded in the recorder's office for Kent county, Delaware, on the 5th of October, 1867. We have also a record from Kent county, Delaware, which indicates that there was a previous lien upon the same land. This copy of the writ recites that by a certain indenture made in Kent county on the 31st of December, 1864, this lien, which was prior to this mortgage, extended back to that time. And this record showed that there was a sale of the land bound by that lien in 1876, and the property was sold for $500.

The testimony of R. R. Little is that he was employed as an attorney by Jacob Depew, and that, in 1868, he thinks, he was consulted in reference to the collection of this mortgage, that was the year after it was dated; and he suggested that an attorney be employed where the land lay, where the mortgage was recorded, in Dover, Delaware; and that with some assistance the name of an attorney was found there that was supposed to be a suitable person, and the claim for collection put into his hands.

We also have the depositions taken on both sides which bear somewhat upon this question, the testimony of Solomon, Thomas, and Israel Depew.

Counsel for plaintiff request us to charge you as follows:

1. If the jury believe the bond in suit to be the bond of the defendant, and that after Thomas Depew returned from the state of Delaware he asked Jacob Depew for $10 to get the bond against Wm. R. Scott out of the hands of the man who held it, in order that he, Thomas, might put it in process of collection with a new attorney whom he had employed, and that Jacob Depew thereupon refused to give the $10, saying that he would pay no more money, and: "I forbid you doing anything more on my account," adding also: "As to the bond to Solomon Depew; it is outlawed and I shall pay no more attention to it,"—that

this is such neglect and failure on part of defendant to try to collect from Wm. R. Scott as to make him liable on bond in suit, and the verdict should be for the plaintiff.

To this we answer: First, the evidence with reference to the execution of the bond is submitted to the jury, and they must find from the weight of the evidence whether or not the bond was executed by the defendant. If they find it was not, their verdict must be for the defendant. If they find that it was properly executed they must satisfy themselves from the evidence whether or not there has been a breach of the conditions of the bond, and in this connection they must consider the evidence referred to in plaintiff's first point, in connection with the rest of the evidence in the case bearing upon the question of negligence in collecting.

If, upon a full consideration of all the evidence in the case, the jury find that there was negligence on the part of Jacob Depew in the collection of the claim against Scott, and that the loss was occasioned by such negligence, the verdict should be for the plaintiff.

2. If the jury believe the bond in suit to be the defendant's bond, they should find for the plaintiff, as the defendant has failed to show that he has made adequate effort to collect the claim against William R. Scott; or to show that he was insolvent; or that the claim of defendant against him was not collected, there being no evidence that Wm. R. Scott had no other property than that described in the mortgage; and, the burden of proving these points being on the defendant, that they used due diligence to collect such demand.

Not affirmed.

3. If the jury believe the bond in suit to be the bond of the defendant, and that the failure of Jacob Depew to collect the money from Wm. R. Scott arose from any neglect or fault on the part of said Jacob Depew, they should find for the plaintiff.

If the failure of Jacob Depew to collect the money from Wm. R. Scott arose from negligence on his part, the jury should find for plaintiff; but the burden of proving negligence is upon the plaintiff to prove that Jacob Depew was guilty of negligence.

4. Under all the circumstances in this case, verdict should be for plaintiff.

Not affirmed.

Counsel for defendant request us to charge you as follows:

1. That, as this is an action of covenant, there can be no recovery without proof of a breach of the bond as it is written, signed, and sealed, and the condition as written, signed, and sealed, requires the collection of something from Scott before Jacob Depew can be compelled to pay anything.

As this is an action of covenant, there can be no recovery by the plaintiff without proof of a breach of the bond. In considering whether there has been a breach or not, we must consider the clear meaning of the bond as expressed by the written evidence as contained in the whole bond. The language, "Jacob Depew agrees to pay the above instalments as expressed on condition that he, Jacob Depew, collects the above sum of Wm. R. Scott, of the state of Delaware," clearly implies an intent in the bond that the obligor shall make a reasonable effort to collect the amount from Scott. The burden being upon the plaintiff to prove a breach of the bond, to enable him to recover he must prove, either that the defendant did collect the money from Wm. R. Scott, or failed to collect it by reason of negligence.

2. That, as there is no evidence that Jacob Depew has collected anything from Scott, the condition of the bond has not been broken, and there can be no recovery against him in this action.

Not affirmed; all the evidence relative to a breach of the bond is submitted to the jury.

3. That, in any event, if the jury believe that Jacob Depew made an honest effort to collect the claim against Scott, an effort such as he would have made to collect his own debt, there can be no recovery against him.

Affirmed.

4. The burden is upon the plaintiff of proving negligence on the part of Jacob Depew in the collection of the claim against Scott, and that a loss was occasioned by such negligence; and there is no evidence that the claim could have been collected at any time.

Affirmed, except as to saying "there is no evidence."

5. That under the evidence in this case the plaintiff is not entitled to recover.

The whole evidence is submitted to the jury.

6. That the burden of proof is on the plaintiff to show that

Jacob Depew had a valid legal obligation against Scott, and that he had property out of which it could be collected.

We think this is fully answered in affirming the fourth point.

Counsel for plaintiff have made up a statement which they desire to send out, and in which they put down their claim at $1,691.15, and compute interest, making $3,377.92, for which amount they claim your verdict. This will be sent out as a memorandum for you in case you should find in favor of the plaintiff, under the evidence and instructions of the court. If you find for the defendant, you have only to say, we find for the defendant.

We have now presented to you this case. All the legal points required having been answered by the court, the case is now submitted to you for your impartial verdict.

Verdict and judgment having passed for defendant, plaintiff brought error.

*Ryman & Lewis* and *Terry & Streeter,* for plaintiff in error. —In 2 Phillips, Ev. 4th Am. ed. p. 218, it is laid down in the text that "a deposition, when produced, is open to any objection that might have been taken against the evidence of the deponent, if he had been called as a witness. "Where a deposition is taken by a magistrate in another state, under a written agreement that it may be so taken upon the interrogatories and cross interrogatories annexed to the agreement, such agreement operates only as a substitute for a commission to the magistrate named therein and a waiver of objections to the interrogatories in point of form, and does not deprive either party of the right to object, at the trial, to the interrogatories and answers as proving facts by incompetent evidence." See 1 Greenl. Ev. § 323, note 3; Burke v. Young, 2 Serg. & R. 383.

The existence or contents of a bond cannot be proved by parol evidence without first accounting for its nonproduction. Rank v. Shewey, 4 Watts, 218; McDonald v. Campbell, 2 Serg. & R. 473.

The statement of a witness that he heard the plaintiff and defendant both declare in his presence that they owned a piece of property does not suffice to relax the rule excluding secondary evidence. Hart v. Yunt, 1 Watts, 253.

*W. E. & C. A. Little* for defendant in error.

Per Curiam:

Under the agreement indorsed on the deposition of Israel Depew, it may be conceded there was technical error in refusing to entertain an objection to reading the deposition. It was, however, a harmless error. Nothing found therein is of such a hearsay character as to justly require that it should be excluded from the jury. We discover no error in the charge or answers to the points.

Judgment affirmed.