J-A02019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SIERRA NORTH ASSOCIATES LIMITED PA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| KRG KINGS, LLC. | : | |
| | : | No. 598 WDA 2022 |
| Appellant | : | |

Appeal from the Order Entered April 18, 2022
In the Court of Common Pleas of Blair County Civil Division at No(s):
No. 2021-GN-3975

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 23, 2023**

KRG Kings, LLC ("Tenant") appeals from the April 18, 2022 order denying Tenant's petition to open a confessed judgment arising from a commercial ground lease between the parties and declining to issue a rule to show cause.  We reverse and remand for further proceedings.

On September 15, 1995, King's Family Restaurant ("King's") entered into a twenty-year commercial ground lease ("the lease") with Sierra North Associates Limited PA ("Landlord"), the owner of certain unimproved real estate located in Allegheny Township, Blair County, Pennsylvania ("the premises"), for King's to construct thereon a building and outside improvements for use as a restaurant.  The lease included additional five-year and four-year options, and provided for the following graduated rent schedule:

_____

[*]  Retired Senior Judge assigned to the Superior Court.

| Lease Years | Total rent for the period | Monthly rent payment |
|---|---|---|
| 1-10 | $42,500.00 | $3,541.67 |
| 11-15 | $46,750.00 | $3,895.83 |
| 16-20 | $51,425.00 | $4,285.42 |
| 21-25 | $56,567.00 | $4,713.92 |
| 26-29 | $62,224.00 | $5,185.33 |

*See* Ground Lease, 9/15/95, at ¶ 8. On April 1, 2015, King's assigned the lease to Tenant, with an effective date of April 3, 2015.

In August 2020, Landlord initiated confessed judgment proceedings against Tenant ("the 2020 proceedings"). The filings related to the 2020 proceedings are not included in the certified record, but it appears that Landlord terminated the lease shortly before commencing the 2020 proceedings because Tenant had failed to timely pay rent during the COVID-19 pandemic. Tenant filed a petition to open/strike, which the trial court denied, and Tenant appealed to this Court. In exchange for Tenant withdrawing its appeal and Landlord discontinuing the underlying confessed judgment action, the parties executed an amendment of the lease ("the amendment").[1] *See* First Amendment to Lease Agreement, 4/16/21.

---

[1] The amendment is the only portion of the 2020 proceedings that appears in the certified record.

The amendment, which was set to commence retroactively to April 1, 2021, and run until December 31, 2022, addressed Tenant's outstanding obligations dating back to July 2020. Of relevance to the instant appeal, ¶ 3 of the lease was amended to provide that, as additional consideration for the amendment, Tenant was required by April 16, 2021, to pay Landlord a lump sum of $37,545.00, and Landlord's attorney a lump sum of $10,000.00.

Regarding rent payments, ¶ 8 from the lease, which set forth the lease's rent schedule, was revised to read as follows:

> 8. Minimum monthly rent shall be $12,814.00 payable on or before the first of each consecutive month, commencing on May 1, 2021 and continuing to and including the October 1, 2021 payment, and commencing with the November 1, 2021 payment, the monthly minimum rent shall be $6,250.00 for the balance of the term. The rent due April 1, 2021 is included in the payment by Tenant under Paragraph 3. Late fees shall continue to be calculated in accordance with the terms of the Lease.

First Amendment to Lease Agreement, 4/16/21, at 2.

Finally, in addition to Tenant withdrawing its appeal and Landlord withdrawing the underlying confessed judgment action, the parties included the following release in the amendment:

> As a material inducement for Landlord and Tenant (each hereinafter referred to as a "Party") to enter into this First Amendment, each Party on behalf of itself and all of its respective past, present and future equity owners, officers, employees, agents, affiliates, attorneys, representatives, heirs, successors and assigns, as applicable (collectively, the "Releasing Parties") remises, releases, acquits, satisfies and forever discharges the other Party, and all of the respective past, present and future officers, directors, employees, agent, attorneys, representatives, participants, heirs, successors and assigns of the other Party (collectively, the "Released Parties"), from any and all manner of

> liabilities, obligations, expenses, damages, defenses, judgments, executions, claims, demands, actions, and/or causes of action of any nature whatsoever, whether at law or in equity, which any of the Releasing Parties ever had, now has, or which may result from the past or present state of things, from the beginning of time to the effective date of this First Amendment, and expressly excluding the Parties' obligations under the Lease, as amended, from and after the effective date of this First Amendment, against or related to the Released Parties, including without limitation any and all claims arising from or related to the Lease.

*Id*. at 1-2.

In December 2021, after Tenant failed to pay the monthly rent for October, November, and December 2021, as well as the 2021-2022 school real estate tax, Landlord terminated the amended lease and demanded that Tenant vacate the premises. Tenant did not vacate the premises. Therefore, on December 17, 2021, Landlord filed the underlying petition for confession of judgment for money and possession, seeking ejectment and judgment in favor of Landlord and against Tenant in the amount of $45,918.13 for the missed rent payments, school taxes, late fees, and attorney fees.

On March 3, 2022, Tenant filed a petition to open the confessed judgment and stay execution. Tenant asserted a meritorious defense that it was not in default at the time Landlord filed the underlying petition for confessed judgment because it had overpaid Landlord. First, as supported by attached emails, Tenant averred that the amendment's $37,545.00 lump-sum payment to Landlord comprised reimbursement for the 2020 real estate taxes ($19,996.00), 2021 Blair County/Allegheny Township taxes ($5,911.00), common area maintenance fees ($5,074), and the April 2021 holdover rent

payment ($6,564.00). **See** Petition to Open, 3/3/22, Exhibit 4 at unnumbered 2-3.

Second, Tenant relied on the same email communications to explain the reason for the amendment's two-tiered rent schedule. To wit, Tenant claimed that the amendment provided for new, increased monthly rent payments of $6,250.00 beginning May 1, 2021. In addition, Tenant was to pay the outstanding rent for July 20, 2020 through March 31, 2021 ($39,384.04), in six equal payments of $6,654.00 for each of the first six months of the new rent schedule. Thus, according to Tenant, the rent payable for the first six months under the amendment was a total of $12,814.00 per month. **See id**. at Exhibit 4 unnumbered 2.

Notwithstanding this agreement, Tenant remitted to Landlord five rent checks pursuant to the lease's rent schedule, *i.e.*, $4,713.92, between August 2020 and March 2021, before remitting in May 2021 a rent check pursuant to the amendment's new rent schedule, *i.e.*, $12,814.01. **See id**. at Exhibit 5. During that same period, Tenant also remitted to Landlord a check for $28,283.52 in August 2020, and a check for $14,141.76 in March 2021, though the reason for these disbursements is unclear. **See id**. Based upon the foregoing, Tenant attached an accounting spreadsheet and argued to the trial court that at the time it supposedly was in default for failing to make a payment, it had in fact overpaid Landlord because it had remitted payments both under the lease's rent schedule and pursuant to the amendment's rent

schedule for the same period. *See id*. at 5, 7 (arguing that "because [Tenant] remitted payments intended to satisfy [Landlord's] rent claims for July 2020 to April 2021 that had already been paid in full as of March 2021, [Tenant] had a credit in its favor under the [l]ease as of October 2021").

Landlord filed a motion to dismiss and an answer, contesting Tenant's assertion that it was not in default and had overpaid. Landlord attached its own accounting sheet, along with additional correspondence regarding the October, November, and December 2021 missed payments. Additionally, Landlord increased its monetary damages claim to $141,544.73. *See* Motion to Dismiss, 3/21/22, at 4. In response, Tenant filed a memorandum in support of issuance of a rule to show cause regarding its petition to open the confessed judgment.[2]

On April 18, 2022, the trial court denied Tenant's petition to open judgment and declined to issue a rule to show cause. The court found that Tenant had not met its *prima facie* burden to establish a viable defense. In short, it discredited Tenant's argument that it had overpaid and not defaulted "[g]iven [Tenant's] history of defaulting on rent with [Landlord]" in the 2020 proceedings. *See* Order, 4/18/22, at 2. The trial court entered judgment in the amount of $141,544.73 and, upon Landlord's filing of a writ of execution,

---

[2] Although it is not contained in the certified record, the reproduced record includes a memorandum in opposition from Landlord. *See* Reproduced Record at 155-164.

directed the sheriff to remove Tenant from the premises. Thereafter, Landlord

filed *praecipes* for writs of execution for money and possession. Tenant filed

a motion for reconsideration, which the trial court denied.

Tenant timely filed an appeal to this Court. Tenant and the trial court

have complied with Pa.R.A.P. 1925.[3] Tenant presents the following issues for

our consideration:

I.    Whether the trial court erred in refusing to issue a rule to
      show cause and stay of proceedings in accordance with
      Pa.R.Civ.P. 2959(b) because the Petition to Open Judgment
      filed by [Tenant] stated *prima facie* grounds for relief.

II.   Whether the trial court erred in finding that [Tenant] was in
      default under the terms and conditions of the parties' Lease
      Agreement at the time judgment by confession was entered
      in favor of [Landlord] because [Landlord] failed to properly
      credit all payments made by [Tenant[4]].

III.  Whether the trial court erred in increasing the amount of the
      money judgment by confession originally entered in favor of
      [Landlord] on December 7, 2021 to include additional rent
      that accrued after judgment by confession for possession
      was entered and/or without a motion by [Landlord] to
      reassess damages.

Tenant's brief at 4.

We review the denial of a petition to open a confessed judgment for an

abuse of discretion or error of law. ***Ferrick v. Bianchini***, 69 A.3d 642, 647

---

[3] In lieu of a Rule 1925(a) opinion, the trial court relied on the reasoning
proffered within its two-page April 18, 2022 order.

[4] In its statement of questions, Tenant referred to "Appellee" here. However,
in context, we believe that Tenant meant to refer to payments that had been
made by Tenant and have made the appropriate correction.

- 7 -

(Pa.Super. 2013). Tenant first argues that the trial court erred in not issuing a rule to show cause and stay of proceedings in accordance with Pa.R.C.P. 2959(b). *See* Tenant's brief at 10. Rule 2959(b) provides as follows:

> If the petition states *prima facie* grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings. After being served with a copy of the petition the plaintiff shall file an answer on or before the return day of the rule. The return day of the rule shall be fixed by the court by local rule or special order.

Pa.R.C.P. 2959(b). The issuance of a rule to show cause is mandatory when the petitioner has satisfied this *prima facie* requirement. **See Ohio Pure Foods, Inc. v. Barbe**, 697 A.2d 252, 253 (Pa. 1997). Such issuance "is merely the first step in the process which culminates in the disposition of the rule, i.e., a determination of whether the judgment should be opened." **Id**.

Disposition of the rule to show cause is then governed by Rule 2959(e), which states that

> [t]he court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions and other evidence. The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.

Pa.R.C.P. 2959(e). This Court has explained that "[a] judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury." **Ferrick**, **supra** at 647 (citation omitted). "A meritorious defense is one upon which relief **could** be afforded if proven at

trial." *Id*. (citation omitted, emphasis added). A petitioner need not prove that he **would** prevail if the judgment was opened. *See Neducsin v. Caplan*, 121 A.3d 498, 506 (Pa.Super. 2015). In adjudicating a petition to open judgment, the trial court must consider the evidence in the light most favorable to the moving party, including all reasonable inferences, and reject any contrary evidence from the non-moving party. *Id*.

Tenant argues that the first question before the trial court upon filing of the petition was whether Tenant had "stated *prima facie* grounds for relief such that a rule to show cause was mandated." Tenant's brief at 13. Tenant avers that it satisfied this preliminary burden and therefore "was entitled to present further evidence in support of the [p]etition and to test the allegations raised by [Landlord] in its [a]nswer." *Id*. We agree.

The trial court offered the following explanation for finding that Tenant had not satisfied its *prima facie* burden or presented a meritorious defense that would warrant opening the confessed judgment:[5]

> In [the 2020 proceedings], this Court previously ruled on a petition to open judgment of confession between these same two parties due to several defaults in payment of rent. [In the 2020 proceedings], we found that [Tenant] had defaulted in its payment of rent, and we declined to open the judgment then as well. Given [Tenant's] history of defaulting on rent with this landlord, we find the argument that not only were they not in default, but that they actually overpaid rent in this instance to be inaccurate.

_____

[5] We note that Landlord's challenge to the petition to open and the trial court's denial focus on the merits of Tenant's alleged defense. There has been no challenge to the timeliness of the petition to open.

Order, 4/18/22, at 1-2.

Not only are the court's findings from the 2020 proceeding not germane to the question of whether Tenant had presented a meritorious defense to the instant confessed judgment proceedings, the 2020 proceedings were not even part of the record before the trial court at the time it rendered the above holding. Indeed, by virtue of the amendment's release, any violation that occurred as part of the 2020 proceedings was legally defunct. Thus, upon review, we conclude that in adjudicating Tenant's petition to open the confessed judgment, the trial court impermissibly relied on the 2020 proceedings.[6] Moreover, the court failed to view the evidence in the light most favorable to Tenant as the moving party and instead improperly credited the contrary evidence submitted by Landlord, the non-moving party. ***See*** Tenant's reply brief at 5 (observing that the trial court "discounted [Tenant's] factual assertions in favor of [Landlord]"); ***see also*** Landlord's brief at 21 (noting that "after a review of the competing calculations offered by [Tenant] and [Landlord], the trial court exercised its discretion in determining that [Tenant] had defaulted under the lease").

Landlord counters that the trial court was permitted to credit Landlord's averments over Tenant's because Tenant had not presented a factual dispute

---

[6] As noted, it appears that the 2020 proceedings concerned Tenant's alleged late payments in the context of the COVID-19 pandemic. No such defense has been raised in support of Tenant's petition to open the instant confessed judgment.

but had instead raised a legal question that could be determined by "interpretation of the agreement, as amended, and the application of the payments made by [Tenant], and the resulting amount due." Landlord's brief at 19-20 (capitalization altered). *Id*. at 21. This argument, like the trial court's analysis, disregards the threshold question before the trial court, which was merely whether Tenant had stated *prima facie* grounds for relief, and instead focuses upon the merits of Tenant's claim and whether Tenant was entitled to an opening of the confessed judgment. Based on the foregoing, we conclude that the trial court palpably abused its discretion in bypassing its mandate to issue a rule to show cause once Tenant stated *prima facie* grounds for relief and prematurely denying the petition to open the confessed judgment based upon inappropriately viewing the evidence in the light most favorable to the non-moving party.

Since Tenant satisfied its burden of setting forth *prima facie* grounds for relief and was therefore entitled to the issuance of a rule to show cause, we reverse the trial court's April 18, 2022 order and remand for proceedings consistent with this memorandum. In light of our disposition, we do not reach Tenant's remaining claims on appeal.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/23/2023